PETERS, J.
assigns additional reasons.
hi agree with the opinion rendered in this matter, but write additional reasons for the singular purpose of expanding on the factual aspects of the litigation as set forth in the opinion rendered. To that end, some of the facts set forth in the primary opinion may be repeated herein.
Soon after Ms. Stockman sustained her initial injury, she underwent two separate shoulder surgeries performed by Dr. Dru-ry, and MTI does not dispute that her workplace injury caused the shoulder injuries. While she did not complain of cervical problems to Dr. Drury for ten months after the accident and after her two surgeries had basically resolved themselves, Dr. Drury suggested that he did not find her subsequent complaints to be unusual. In fact, the very purpose of the nerve-root-blockage procedure was to try to determine if there was a connection between the cervical complaints and the original injury.
The only issue before the WCJ on July 22, 2010, was whether the diagnostic test recommended by Dr. Drury should be authorized. However, the WCJ did not limit its opinion to that issue. Instead, the WCJ ordered that MTI authorize the *1222 nerve-root-bloekage procedure and, at the same time, made a factual finding that lathe shoulder and cervical complaints were not related. This court considered these inconsistent findings and, in doing so, affirmed the authorization of the nerve-root-blockage procedure and reversed the causation finding. Stockman v. Med. Tech., Inc., 11-285 (La.App. 3 Cir. 12/14/11), 81 So.3d 198, writ denied, 12-145 (La.3/23/12), 85 So.3d 94. On the latter issue, this court found that the WCJ had ruled on an issue not properly before it. Id. Additionally, this court went further and awarded Ms. Stockman $2,000.00 in statutory penalties for MTI’s failure to authorize the diagnostic testing. Id.
MTI claims that even before our decision was handed down, it authorized the nerve-root-blockage procedure and that this resulted in the September 10, 2010 epidural injection. However, in its reasons for judgment arising from the April 25, 2013 hearing giving rise to this appeal, the WCJ concluded that the record contained no evidence that the authorization occurred. Additionally, with regard to MTI’s argument that the epidural injection took the place of the nerve-root-blockage procedure, Dr. Drury testified that while both procedures might “treat” the same condition, the epidural injection was not the “diagnostic” test he requested.
Additionally, MTI asserts that even if Dr. Drury performed the wrong procedure, it is relieved of its responsibility under the judgment arising from the July 22, 2010 hearing because Dr. Drury has not pressed for the nerve-root-blockage procedure. In making this argument, MTI ignores the fact that Ms. Stockman has continued to press for the procedure. As I understand Dr. Drury’s testimony, he basically gave up trying and simply described matters as how they were at the time of his testimony and not how they might have been had the diagnostic procedure been performed.
RMTI also notes in argument to this court that Ms. Stockman sustained four accidents subsequent to the work injury, and two of those accidents are mentioned in this court’s opinion. The first accident occurred in June of 2010, when Ms. Stock-man fell out of a boat. The next is the October 2, 2010 chair incident referenced in this court’s opinion, and MTI suggests that a third occurred in March of 2012, when Ms. Stockman fell up a flight of stairs. The fourth accident is the April 3, 2012 accident referenced in this court’s opinion. While these may ultimately play a part in the long-range physical condition of Ms. Stockman, it is significant to note that the first accident occurred nine months after her initial cervical complaints and the request for the nerve-root-blockage procedure, and the last accident occurred five months after this court’s first opinion.
MTI terminated Ms. Stockman’s benefits nine days after the September 30, 2010 epidural procedure and even before the WCJ signed the November 10, 2010 judgment arising from the July 22, 2010 hearing. Despite, the release of this court’s opinion reversing the WCJ’s causation decision, it never reinstated the benefits.
In addition to the continuing issue of the authorization of the nerve-root-blockage procedure and potential penalties associated therewith, the WCJ was faced with two separate claims relative to the compensation benefits. Mr. Stockman sought a judgment reinstating the compensation benefits, and MTI sought a judgment terminating those benefits. The WCJ chose to terminate the benefits while still requiring MTI’s adherence to its original order concerning the nerve-root-blockage procedure.
*1223 In his June 27, 2018 oral reasons for judgment, the WCJ found that Ms. Stock-man’s cervical complaints were not supported by the medical evidence given 14Pr. Drury’s testimony that her complaints could just have easily been caused by degeneration. This was clear error given the fact that Dr. Drury answered the question still without the benefit of the diagnostic test he had requested years before.
Specifically, the WCJ couched the weekly benefit issue as to whether Ms. Stock-man was “still entitled to disability benefits[J” Clearly that question could not be answered without the results of the diagnostic test ordered by Dr. Drury. The proper question to be answered, and the primary opinion answered this question in the negative, is whether at this time Ms. Stockman is entitled to a reinstatement of benefits. While her current physical condition finds her capable of engaging in gainful employment, she may well be entitled to some benefits depending on the results of the still incomplete medical picture. The current disposition of this matter addresses all of the issues in full.